Howard NELSON, Jr. and Evelyn Nelson, Respondents,

v.

BRENTWOOD CONDOMINIUM ASSOCIATION, et al., Appellants.

No. WD 39037.

Missouri Court of Appeals, Western District.

Dec. 22, 1987.

Karon D. Ramsey, Kansas City, for appellants.

Thomas R. Larson, Kansas City, for respondents.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

GAITAN, Judge.

This is a civil action for injunctive relief and damages brought by plaintiffs/respondents Howard Nelson, Jr. and Evelyn Nelson against the defendant/appellant, Brentwood Condominium Association and its board of directors. By this suit, plaintiffs seek to have the roof over their condominium unit replaced and a new drainage system installed. The trial court bifurcated the trial and the sole issue here is the mandatory injunctive relief requested. The trial court granted the plaintiffs' mandatory injunction. The defendant appeals that judgment alleging that: (1) the trial court erred by granting a permanent injunction without notice that the court had consolidated the hearing on the application for a preliminary injunction with a trial on the merits; (2) plaintiff is not entitled to equitable relief as he comes into court with unclean hands; (3) plaintiffs have an existing adequate remedy at law; and (4) the order was unclear, vague and impossible to perform. We reverse.

Plaintiffs purchased a condominium at the Brentwood from its previous owner in 1981. At the time that plaintiffs inspected the property prior to possession, there was evidence of a leak in the upstairs bathroom. The defendant repaired the interior evidence of the leak. A roof membrane system was installed on the lower level of the plaintiffs' unit on October 26, 1981, and a roof membrane system was installed on the upper unit on June 6, 1982.

As early as 1982, evidence of leakage again appeared in the plaintiffs' unit. By October of 1984, continued leakage had caused substantial interior damage. Plaintiffs had the interior portions repaired at their own expense in December, 1984. In February of 1985, substantial leakage had again occurred. Plaintiffs repeatedly complained to the Board's managing agent about the condition of the roof and attempted to get it repaired to no avail. The alleged repairs were not successful and the roof continued to leak. In March, 1985, plaintiff ceased paying for maintenance. That same month, plaintiff, Howard Nelson, personally appeared before the defendant's full board. The Board assured plaintiffs that they intended to hire an independent roofer to give them an opinion about the roof. At no time subsequent to Mr. Nelson's appearance did the Board or its agents advise plaintiffs of obtaining such an independent expert opinion.

Plaintiffs asked two different roofers to give them an evaluation of the roofing systems. By April, 1986, plaintiffs retained an independent expert to assess the exterior common elements and on April 18, 1986, filed a breach of contract and negligence suit (Count Il).

Ancillary to the petition, plaintiffs sought a temporary injunction, and the hearing on that was held on May 30, 1986. Howard Nelson testified as did Thomas Langley, the expert who Nelson had retained to investigate the roof. Langley is a civil engineer of more than twenty-five years experience as a consulting engineer. He investigated the cause of the problem and made recommendations. It was Langley's opinion that the only way to remedy the problem was a total tear-off and replacement of the roofing system.

The hearing in the temporary injunction concluded with the court informing the parties that it would postpone making a ruling

until defendant had sufficient time to conduct its own investigation into the cause of the leaks. The court stated it would hold the case under advisement until notified as to what further proceedings were desired.

On June 5, 1986, defendant filed its Answer to Plaintiffs' Petition for Injunction and damages.

Apparently an off-the-record conference was held on September 18, 1986, whereupon the defendant advised the court of the result of its investigation. During this conference which is not of record, the defendant allegedly agreed that it would be necessary to replace the roof. No further proceedings, either on or off the record, were held. Thereafter on October 6, 1986, the trial court entered judgment on Count I only of plaintiffs' petition, granting them a mandatory injunction and requiring defendant "... to cause to be constructed, repaired, and maintained of proper material and application, at defendant Association's expense, roofs, drainage systems and all maintenance, repairs and improvements to the exterior portions of the plaintiffs' unit for preventing the leakage of water into plaintiffs' unit." Defendant was to proceed forthwith and complete the court's mandate no later than midnight, October 31, 1986.

On November 18, 1986, Petition For Order To Show Cause was filed and the contempt hearing was noticed for November 25, 1986. At a hearing convened on December 11, 1986, Howard Nelson testified that continued leakage occurred throughout the period from the initial hearing on May 30, 1986 to that date, nearly six months later.

At the conclusion of the evidence (December 12, 1986), the trial court made the following findings and rulings relative to its October 6, 1986 order:

1. A feasible solution to the problem with the leaking roof now exists in the form of the Cedarcrest Roofing Company proposal to accomplish the repair and re-roofing of the condominium unit located at 4512 Jefferson, and which would cost about twenty-one thousand six hundred fifty-six dollars.

2. It is now December 12th, we have good weather, which is not uncommon in December, but yet we all know we are going to have the severest months of the winter on us very quickly. It is an emergency and it is absolutely essential that this work be done promptly.

3. Although Brentwood might execute release of Grace in consideration for their full payment of the cost of reroofing, it is not unduly or economically burdensome to anyone; it is reasonable, it is sensible, and it is affordable, and it can be accomplished.

4. The association and the individual members comprising the board are to expeditiously proceed to reroof the condominium at 4512 Jefferson according to the Cedarcrest proposal mentioned in the evidence, and execute all documents necessary to proceed with the work, including the release that has been shown, displayed here in evidence, so all of this can be promptly accomplished.

5. The court is continuing jurisdiction of this matter and if at a later time upon proper motion and herein it should find that the board has delayed unreasonably and without good cause the accomplishment of its ruling, they will be held individually accountable for contempt and probably assessed a fine something in the nature of ten dollars per day per person, in addition to whatever fine might be appropriate to the association itself.

At the conclusion of the hearing of December 12, 1986, defense counsel requested that the trial court designate its mandatory injunction judgment of October 6, 1986 as an appealable order. The trial court complied with this request in its Order and Judgement of December 11, 1986. This appeal followed.

In its first point on appeal, defendant claims that the trial court erred in granting a permanent mandatory injunction because no notice had been given that the hearing on the application for a preliminary injunction had been consolidated with a trial on the merits of a permanent injunction. See Rule 92.02(a)(2). Defendant contends that this lack of notice deprived it of the oppor-

tunity to fully develop and present its case for adjudication. We agree.

There was no notice of consolidation except that referenced in the October 6 order. Additionally there was no record which would indicate that the defendant did not plan to present a case. Further, there was no notice that the court would enter its findings and judgment based upon the evidence presented May 30, 1986. Unless the parties agree and that agreement is apparent from the record, the cause may not be finally determined on the evidence submitted at the hearing on the application for temporary injunction. *Pomirko v. Sayad*, 693 S.W.2d 323, 325 (Mo.App.1985); *See Big Valley, Inc. v. First National Bank of Pulaski County*, 578 S.W.2d 616, 618 n. 3 (Mo.App.1978).

As the record demonstrates, the trial court adjourned the hearing on the temporary injunction in order to give defendant sufficient time to conduct its investigation and at that time assured the parties that when proceedings resumed, they would be permitted to recall and re-examine witnesses, call additional witnesses and add such parties, plaintiff or defendant, as were necessary or desirable. However, these proceedings never resumed on the record. Instead, there was apparently a conference held September 18, 1986, between the court and counsel. There is no record of this conference. Consequently, it appears from the record that the trial court based its mandatory or permanent injunction of October 6, 1986 upon the plaintiffs' evidence at the hearing on the temporary injunction.

Regrettably, we must send this matter back to the trial court for a full and complete presentation of the evidence *on the record*. This problem with the damaged roof has gone on for too long without being properly addressed by the defendant. The plaintiffs have been extremely tolerant of that situation. We understand the trial court may have acted expeditiously in an effort to remove the continuing burden placed upon plaintiffs by the defendant's failure to act. However, the trial court must act in accordance with and regard for the procedural safeguards referenced in *Pomirko v. Sayad, supra.* The defendant raised points on this appeal that, had it been given an opportunity, the trial court should have addressed. Consequently, we reverse and remand for a hearing on the permanent injunction. Whereupon, the trial court shall make findings of facts and conclusions of law.

The judgment is reversed and remanded in accordance with the directives of this opinion.

All concur.